IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**  *Plaintiff,*  v.  **$184,980.00 IN U.S. CURRENCY,**  *First-Named Defendant Property;*  **JAMES E. MAXWELL, JR.,**  *Claimant.* | **CIVIL ACTION NO.**  **5:15-cv-00065-TES** |

## ORDER GRANTING GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

In the instant civil-forfeiture action, the United States (the "Government") moves for summary judgment against $184,980.00 ("Defendant Property") and James E. Maxwell, Jr. ("Claimant"). [Doc. 67]. Claimant does not contest the motion, and for the following reasons, the Government's motion is **GRANTED**.

### FACTUAL BACKGROUND

The following facts are undisputed.[1] In June of 2013, Drug Enforcement Administration ("DEA") agents seized $139,700.00 from Ira Christopher Jackson at the San Francisco International Airport in San Francisco, California. [Doc. 55-2, p. 2; Doc. 67-

---

[1] Plaintiff filed no response to the Government's motion for summary judgment or statement of material facts, and the facts contained therein are therefore deemed admitted. *See* LR 56, MDGa ("All material facts contained in the movant's statement [of material facts] which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate.").

3, p. 21:3-13]. Afterward, now-retired DEA Special Agent Helen Graziadei directed that the seized currency be returned to Mr. Jackson so as not to interfere with an ongoing criminal investigation. [*Id.*]. Approximately four months later, Houston (Texas) Police Department officers seized $219,790.00 from Claimant at George Bush Intercontinental Airport in Houston, Texas. *See generally* [Doc. 55-1].[2] As with the currency seized from Ira Jackson, Special Agent Graziadei directed that the currency seized from Claimant be returned upon discovering that Claimant was also part of an ongoing investigation. [Doc. 67-3, p. 20:1–16].

The DEA and other law enforcement agencies began investigating Claimant and others in January of 2014 for a conspiracy involving a flow of money, marijuana, and cocaine between Macon, Georgia, Houston, Texas, and northern California. [*Id.* at pp. 15:11—16:9; Doc. 67-4, ¶ 3]. The following individuals participated in the conspiracy: Claimant (a/k/a "Sonny Spoon"), Frederick Carter, Ira Jackson, Kenna Middleton (a/k/a "Cuz"), Chancellor Lucear, James Faulks (a/k/a "Red"), Bernard Engram (a/k/a "Cricket"), Shukree Simmons, Skylar Ward, William Shamone Lewis (a/k/a "Mone"), and Joseph Pierre Brown. [*Id.* at pp. 16:10—19:13; Doc. 67-5]. The conspiracy and the

---

[2] Although the Court generally may not consider inadmissible evidence when ruling on a motion for summary judgment, the Court may consider hearsay evidence "if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999)).

individuals involved are hereinafter referred to as the "DTO," or Drug Trafficking Organization.

Between August 29 and October 1, 2014, the Government applied for and received three court orders authorizing the interception of wire and other electronic communications. *See United States v. 919-819-0426*, No. 5:14-mj-00029-CHW, ECF Nos. 32, 34, 52. The DEA used these orders to intercept cell phone calls and texts messages from devices including phones used by Ira Jackson and Claimant. *Id.* The contents of the communications revealed to DEA agents that DTO participants were depositing large amounts of cash into bank accounts and distributing cocaine and marijuana. [Doc. 67-4, ¶¶ 4–25; Doc. 67-6; Docs. 55-4 through -7].

On October 11 and 12, 2014, the DEA intercepted numerous calls and text messages showing that Claimant and other DTO members were collecting drug proceeds to be transported to Houston, Texas. [Doc. 67-4, ¶¶ 12–25]. In the early morning of October 12, 2014, Special Agent Graziadei observed via surveillance camera footage a white limousine pulling up to a music studio in Macon, Georgia, where Maxwell facilitated his drug trafficking activities. [*Id.* at ¶¶ 25–26]. At around the same time, Special Agent Graziadei observed another vehicle fitting the description of one driven by DTO co-conspirator Kenna Middleton pull up next to the white limousine. [*Id.* at ¶ 26]. Two individuals met at the trunk of the limousine, opened it, placed something inside,

and closed it again. [*Id.*]. The individuals returned to their vehicles and then drove away. [*Id.*].

Approximately an hour later and at the direction of the DEA, Georgia State Patrol Corporal (now Sergeant) Jay Thompson stopped a white Lincoln Town Car Executive for speeding as it traveled through Butler, Georgia toward Columbus, Georgia. [*Id.* at ¶ 26; Doc. 67-7, ¶¶ 4–6]. Claimant and his driver, Maurice Dillard, were inside the vehicle. [Doc. 67-6, ¶¶ 8, 14, 19]. During the ensuing traffic stop, Mr. Dillard consented to a search of the car but Claimant denied consent to search his belongings, which included a computer bag, clothes, a pillow, a suitcase in the trunk, and $150,000 in cash. [*Id.* at ¶¶ 18, 20–22]. A K-9 unit arrived at the scene of the stop and conducted an open-air sniff of Claimant's luggage, which Corporal Thompson had previously placed in the emergency lane on the side of the road. [*Id.* at ¶ 24, 28–30]. The K-9 alerted to the odor of illegal drugs on the luggage. [*Id.* at ¶ 30]. Corporal Thompson then searched the luggage and found bundles of currency, which he seized and turned over to Sergeant B. Surfus of the Macon-Bibb County Police Department, who was working with the DEA. [*Id.* at ¶¶ 31–33, 39]. Claimant and his driver were released. [*Id.* at ¶ 35].[3]

Later that morning, DEA agents intercepted a phone call between DTO co-conspirators Ira Jackson and Kenna Middleton (a/k/a "Cuz"). [Doc. 55-40; Doc. 55, Ex. 22-

---

[3] State Trooper and K-9 Handler John Morris captured part of the traffic stop on his patrol vehicle dash camera. This footage may be found in the Court's Digital Vault. *See* [Doc. 55, Ex. 26; Doc. 55, Ex. 27; Doc. 67-8].

4

A (audio); Doc. 67-3, p. 49:8–15]. During the call, Jackson indicated that $25,000 of the cash seized during Corporal Thompson's traffic stop belonged to him. [Doc. 55-40; Doc. 55, Ex. 22-A (audio)].

A Grand Jury indicted Claimant and 30 other individuals on various charges, including conspiracy to possess with intent to distribute marijuana and cocaine, possession with intent to distribute marijuana, and money laundering. *United States v. Maxwell*, No. 5:15-cr-00035-MTT-CHW, ECF No. 1. The United States Attorney subsequently charged Claimant by superseding information with two counts of possession with intent to distribute marijuana after two of Claimant's co-defendants admitted that they discussed distributing marijuana with Claimant and assisted him in the distribution of marijuana. *Id.* at ECF Nos. 475, 569, 592. Claimant pled guilty to the charges in the superseding information, and in doing so, he admitted to being a conspirator in the DTO, stipulated that the Government could prove beyond a reasonable doubt that he was traveling to Houston, Texas to exchange the seized cash for marijuana, and stipulated that between 700 and 900 kilograms of marijuana were attributable to him. *Id.* at ECF No. 595. Co-conspirator Ira Jackson also pled guilty to the criminal charges against him and admitted that on March 5 and 6, 2014 he and Claimant made cash deposits at three Bank of America branches in Macon, Georgia to "further the payment and distribution of marijuana." *Id.* at ECF No. 879, p. 9. The Court entered judgment

against Claimant, and he was sentenced to 120 months of imprisonment. *Id.* at ECF No. 1008.

During the underlying criminal prosecution, the Government filed the instant action, alleging that the currency seized by Corporal Thompson constituted forfeitable money used or intended to be used to facilitate a violation of the Controlled Substances Act, 21 U.S.C. § 801 *et seq*. [Doc. 2]. Claimant filed motions to dismiss the complaint and to suppress the evidence obtained by Corporal Thompson during the traffic stop, both of which were denied. *See* [Docs. 26, 27, 46, 56]. The Government now moves for summary judgment, and the Court finds as follows.

## **DISCUSSION**

The Controlled Substances Act provides for the forfeiture of any "moneys . . . or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance . . . , all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of" the Act. 21 U.S.C. § 881(a)(6). In cases, like this one, in which the Government seeks forfeiture of property it alleges was used or involved in the commission of a crime, the Government bears the burden of proving by a preponderance of the evidence that there was a "substantial connection" between the property and the crime. 18 U.S.C. § 983(c). To meet this burden, the Government "need only show that the money was related to some illegal drug transaction." *United States v. 183,791.00 in U.S. Currency*, 391 F. App'x 791, 794 (11th Cir.

2010) (per curiam) (quoting *United States v. $242,484.00*, 389 F.3d 1149, 1160 (11th Cir. 2004) (en banc)). The Court is to consider the evidence in light of the totality of the circumstances and "a common sense view to the realities of normal life." *Id.* (first citing *United States v. $121,100.00 in U.S. Currency*, 999 F.2d 1503, 1507 (11th Cir. 1993) and then citing *$242,484.00*, 389 F.3d at 1160).

Because the Government bears the burden of proof in this case, it must "affirmatively show the absence of a genuine issue of material fact and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of its case." *Landolfi v. City of Melbourne*, 515 F. App'x 832, 834 (11th Cir. 2013) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)). Once the Government has met its burden of proving the forfeitability of the seized currency, the burden shifts to the non-movant, who must "go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.3d at 1115–17). When the non-movant files no response to a motion for summary judgment, the Court may not grant summary judgment by default but must instead consider the merits of the motion, ensure that the motion is supported by evidentiary materials, and review the supporting materials in reaching its decision. *United States v. 5800 SW 74th Ave.*, 363 F.3d 1099, 1101–02 (11th Cir. 2004). The Court must also indicate that it addressed the merits of the motion. *Id.* at 1102.

7

Summary judgment is appropriate in this case for three reasons. First, there is evidence that Claimant was carrying an unusually large amount of money when Corporal Thompson stopped his limousine in October 2014. Although this fact is insufficient on its own to establish that there was a "substantial connection" between the cash and drug-related activity, it is "highly probative" of such a connection. *$121,100.00 in U.S. Currency*, 999 F.2d at 1507; *cf. $183,791.00 in U.S. Currency*, 391 F. App'x at 795. Second, a trained K-9 unit alerted to the odor of drugs on the currency, which is also a factor weighing in favor of the Government, given the lack of evidence that the dog sniff was improper or otherwise incredible. *See $242,484*, 389 F.3d at 1165–66; *cf. 183,791.00 in U.S. Currency*, 391 F. App'x at 795. Third, and perhaps most significantly, Claimant stipulated in his underlying criminal plea agreement that the Government could prove beyond a reasonable doubt that, at the time he was stopped by Corporal Thompson, Claimant "was going to Texas to meet with [co-conspirator Ira Jackson] with a large amount of cash to pay for marijuana." *United States v. Maxwell*, No. 5:15-cr-00035-MTT-CHW, ECF No. 595, p. 7. At his change-of-plea hearing, the Government read this stipulation into the record, and when asked if he agreed with the facts as read, Claimant responded in the affirmative. [Doc. 67-9, pp. 14:3—16:8].

In toto, this evidence establishes that the currency Claimant was transporting at the time Corporal Thompson stopped his limousine was, in fact, intended to be used to

8

obtain illegal drugs. Thus, the Defendant Property had a "substantial connection" to criminal activity and is subject to forfeiture.

## CONCLUSION

Having considered the merits of the Government's Motion for Summary Judgment [Doc. 67], the Court **GRANTS** said motion, and the Clerk of Court is **DIRECTED** to enter judgment in the Government's favor.

**SO ORDERED**, this 3rd day of January, 2019.

**S/ Tilman E. Self, III**
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**
